## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JEANNINE COLEMAN and
CHRISTOPHER BUSH, on behalf of
themselves and all others similarly
situated,

    Plaintiffs,

v.

FORD MOTOR CREDIT COMPANY
LLC d/b/a FORD CREDIT,

    Defendant.

_____/

CASE NO.:

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Jeannine Coleman ("Coleman") and Christopher Bush ("Bush") (collectively, "Plaintiffs"), by and through their undersigned counsel, and on behalf of themselves and all others similarly situated sues Defendant, Ford Motor Credit Company, LLC ("Defendant" or "Ford"), for violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA"), and alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

## NATURE OF ACTION

1. Plaintiffs brings this class action for damages and other equitable relief resulting from Defendant's unlawful conduct in negligently or knowingly and/or willfully placing calls to the cellular telephones of Plaintiffs and putative Class Members for non-emergency purposes, using an automatic telephone dialing

system without their prior express consent, in violation of the TCPA. Plaintiffs and putative Class Members were not Ford customers at the time the calls at issue were placed. Upon information and belief, these calls were intended for persons other than Plaintiffs and putative Class Members.

## PARTIES, JURISDICTION AND VENUE

*Ms. Jeanine Coleman*

2.     Plaintiff, Jeanine Coleman, is and was at all times relevant to this matter a citizen of Pinellas County, Florida.

*Mr. Christopher Bush*

3.     Plaintiff, Christopher Bush, is and was at all times relevant to this matter a citizen of Tarrant County, Texas.

*Defendant*

4.     Defendant, Ford Motor Credit Company, LLC, is a Delaware limited liability corporation with its principal place of business located at 1 American Rd., Dearborn, Michigan, 48126-2701 and which regularly conducts business in the state of Florida through its registered agent C T Corporation System, located at 1200 South Pine Island Road, Plantation, FL 33324.

5.     This Court has federal question jurisdiction over this matter because Plaintiffs' claims arise from violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., which is a law of the United States. This Court also has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000.00, as each putative Class Member is entitled to

2

$500.00 per call negligently placed in violation of the TCPA, or $1,500.00 per call knowingly and/or willfully placed in violation of the TCPA, exclusive of attorneys' fees, pre-judgment interest, and costs, and is a class action in which Plaintiffs are a citizen of a state different from Defendant.

6.     Personal jurisdiction exists over Defendant as it has the necessary minimum contacts with the state of Florida. This suit arises out of Defendant's specific conduct with Plaintiff Coleman in Florida, and Plaintiff Coleman was injured in Florida.

7.     The alleged violations described herein with regard to Plaintiff Coleman occurred in Pinellas County, Florida.  Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), because many of the acts giving rise to this action occurred in this District, Defendant conducts business in this District, and has intentionally availed itself of the laws and markets its automobiles and related services within this District.

**STATEMENT OF FACTS**

**The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.***

8.     The TCPA was enacted by Congress in 1991 to address consumer complaints about rampant telemarketing practices.

9.     Section 227(b)(1)(A)(iii) bans the use of an autodialer to place telephone calls to cellular telephones unless the consumer has provided prior written consent to receive such calls, or the calls are placed for emergency purposes.

10.    The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

11.    Senator Hollings, the TCPA's sponsor, urged Congress to pass the TCPA stating, "[t]hese machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop." 137 Cong. Rec. at S16205.

12.    Senator Hollings described these calls as "the scourge of modern civilization," and stated "they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30,821 (1991).

13.    With the TCPA, "Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

14.    According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC." https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

**Ms. Coleman's Experience**

15.    Ford Credit repeatedly called Plaintiff Coleman's cellular phone in an attempt to contact a person that Plaintiff Coleman has no relationship to and is neither currently nor has ever been associated with.

16.     Some or all the calls Ford Credit made to Plaintiff Coleman's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

17.     Plaintiff Coleman will testify that she knew it was an autodialer because of the number of calls she received and because when she answered her phone an artificial voice came on the line and she received a prerecorded message from Ford Credit.

18.     Plaintiff Coleman believes the calls were made using equipment which has the capacity to store numbers to be called and to dial such numbers automatically.

19.     Plaintiff Coleman is the subscriber, regular user and carrier of the cellular telephone number (727) ***-6274 and was the called party and recipient of Ford Credit's calls.

20.     Ford Credit placed automated calls to Plaintiff Coleman's cellular telephone number (727) ***-6274 in an attempt to reach persons by the name of Kendy Taupier and/or Heather Taupier.

21.     Plaintiff Coleman never provided express consent to Ford Credit to receive pre-recorded messages. On several occasions, Plaintiff Coleman's cell phone received pre-recorded messages from Ford Credit. The pre-recorded

messages indicated, "This message for Heather Taupier or Kendy Taupier from Ford Credit...."

22.     Plaintiff Coleman does not currently nor has ever had any account or business dealings with Ford Credit.

23.     Upon receipt of the calls from Ford Credit, Plaintiff Coleman's caller ID identified the calls were being initiated from, but not limited to, the following numbers: (844) 923-1094, (844) 963-1219, (855) 931-2118, (813) 740-8600; and when those numbers are dialed, an artificial voice answers and identifies the numbers as belonging to Ford Credit.

24.     For example, Plaintiff Coleman received the following incoming calls from Ford Credit:

| DATE | TIME | NUMBER | DURATION |
|---|---|---|---|
| 11/30/2020 | 8:58 AM | (844) 923-1094 | 3 min |
| 12/12/2020 | 9:51 AM | (855) 931-2118 | 1 min |
| 12/14/2020 | 9:45 AM | (844) 963-1219 | 7 min |
| 1/28/2021 | 1:06 PM | (813) 740-8600 | 2 min |
| 2/3/2021 | 8:14 AM | (844) 963-1219 | 1 min |
| 2/5/2021 | 4:18 PM | (844) 963-1219 | 1 min |
| 2/6/2021 | 9:20 AM | (844) 963-1219 | 1 min |
| 2/22/2021 | 9:42 AM | (844) 963-1219 | 2 min |

25.     On several occasions during the last four years, Plaintiff Coleman instructed Ford Credit's agents to stop calling her cellular telephone.

26.     As an example, on or around December 14, 2020, Plaintiff Coleman spoke to Ford Credit's agent on the phone and communicated to Ford Credit that

they had the wrong number, she is not the person they are looking for and instructed Ford Credit's agent to cease calling.

27.     On another instance, on or around January 20, 2021, Plaintiff Coleman communicated with Ford Credit's representative by the name of "Ericka" and explained to her that she is not the person they are looking for, to remove her from Ford Credit's call list, and to cease calling her number.

28.     Every call before and each subsequent call Ford Credit made to Plaintiff Coleman's cellular telephone was done so without the "express consent" of Plaintiff Coleman.

29.     Despite clearly and unequivocally revoking any consent Ford Credit may have erroneously believed it had to call Plaintiff Coleman on her cellular telephone, Ford Credit continues to place automated calls to Plaintiff Coleman.

30.     Plaintiff Coleman's conversations with Ford Credit's agent/representative over the telephone wherein she demanded a cessation of calls were in vain as Ford Credit continues to bombard her with automated calls unbated.

### **Mr. Bush's Experience**

31.     At all relevant times, Plaintiff Bush was an individual residing in the state of Texas.  He is a "person" as defined by 47 U.S.C. § 153(39), and the "called party."  *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

32.     Plaintiff Bush has been a Tracfone subscriber since at least 2015, and holder of his cellular telephone number, (817) XXX-4615, since that time.  Plaintiff Bush was the called party and recipient of Defendant's calls, as described herein.

33.     Over the past four years, Defendant placed, or caused to be placed, approximately 29 automated calls to Plaintiff Bush's cellular telephone number using an automatic telephone dialing system ("ATDS") and/or pre-recorded or artificial voice.

34.     The automated calls were initiated from (800) 346-0017 and (313) 216-2002, which are telephone numbers assigned to Defendant.  The calls were placed regarding the status of an account that does not belong to Plaintiff Bush.

35.     The telephone number Defendant used to contact Plaintiff Bush via an ATDS or pre-recorded or artificial voice was assigned to a cellular telephone service, as described in 47 U.S.C. § 227(b)(1)(A)(iii).

36.     Plaintiff Bush is not a Ford customer and has never had an account or business relationship with Ford.

37.     Plaintiff Bush did not provide his cellular telephone number to Defendant, nor did Plaintiff Bush ever provide express consent for Defendant to place calls to his cellular telephone regarding any subject matter.

38.     Plaintiff Bush answered several of the calls placed by or on behalf of Defendant to his cellular telephone, informed Defendant that it was calling the wrong party, and instructed Defendant to stop calling him.

39.     Defendant intentionally harassed and abused Plaintiff Bush on numerous occasions by calling on a debt he did owe.

40.     Defendant's robocalls, as received by Plaintiff Bush, did not provide him the opportunity to opt out of or request the cessation of Defendant's calls, as evidenced by the fact that Defendant continued placing calls to Plaintiff Bush's cellular telephone number after he informed Defendant that he was not the intended recipient and requested that the calls cease.

41.     Some or all of the calls placed by or on behalf of Defendant to Plaintiff Bush's cellular telephone number were placed and sent using an ATDS or pre-recorded or artificial voice, which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or pre-recorded voice and to dial such numbers, as specified by 47 U.S.C. § 227(a)(1).  Plaintiff Bush will testify that he knew that Defendant was using an autodialer because of the vast number of calls that he received, and because he heard a pause when he answered his phone before a voice came on the line.  Plaintiff also received prerecorded messages to his voicemail from Defendant. Plaintiff heard the pre-recorded messages left on his voicemail by Defendant.

42.     In August 2018, Plaintiff Bush answered a call from Defendant to his cellular telephone number, heard an automated message, held the line, and was eventually connected to a live agent/representative of Defendant, who he informed that the calls to his cellular phone were for an individual unknown to

him.   Plaintiff Bush then demanded that Defendant cease calling his cellular telephone number.

43.   During the aforementioned phone call with Defendant in August 2018, Plaintiff Bush unequivocally revoked any express consent Defendant may have believed it had to place  telephone calls to Plaintiff Bush's cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

44.   Each subsequent call Defendant made to Plaintiff Bush's cellular telephone number was made without the "express consent" of Plaintiff Bush.

45.   Each subsequent call Defendant made to Plaintiff Bush's cellular telephone number was knowing and willful.

46.   The pertinent calls were not placed or sent for emergency purposes, as defined in 47 U.S.C. § 227(b)(1)(A).

47.   Defendant's placement of calls using an ATDS or pre-recorded or artificial voice for non-emergency purposes and without Plaintiff Bush's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

48.   Despite actual knowledge of its wrongdoing, Defendant continued the campaign of abuse, calling Plaintiff Bush despite his revocation of any express consent Defendant may have believed it had to call Plaintiff Bush's cellular telephone number.

49.   Plaintiff Bush's repeated requests for Defendant's harassment to end were ignored.

50.     Defendant received several pre recorded message from Defendant stating "Ford Motor Credit company at the toll free number 1-800-346-0017. Again, the toll free number is 1-800-346-0017."

**Defendant's Conduct was Knowing and/or Willful**

51.     Defendant has a corporate policy to use an ATDS or a pre-recorded or artificial voice to place calls to individuals, just as it did to Plaintiffs' cellular telephones here.

52.     Defendant has a corporate policy to use an ATDS or a pre-recorded or artificial voice, just as it did to the Plaintiffs' cellular telephones in this case, with no way for the consumer to cease the placement of calls.

53.     Defendant's corporate policy is structured so as to continue to place calls to individuals like Plaintiffs, despite these consumers requesting that Defendant cease the placement of calls.

54.     Defendant's corporate policy doesn't provide for regular skip tracing to verify the cell phone subscriber has not changed..

55.     Defendant has previously been accused of harassing and abusing individuals despite actual knowledge that the called parties do not wish to be called.

56.     Defendant has had numerous complaints against it across the country asserting that its ATDS continues to call despite being requested to stop.

11

57.     Defendant has had numerous complaints against it from consumers across the country asking to not be called, however Defendant continues to call these individuals.

58.     As a result of each of the calls described above, Plaintiffs and putative Class Members suffered an invasion of privacy, as well as particularized and concrete injuries, including the inducement of stress, anxiety, nervousness, embarrassment, distress, and/or aggravation. Plaintiffs and putative Class Members also suffered out-of-pocket losses, including the monies paid to their wireless carriers for the receipt of such calls.  Additionally, due to both the answered and unanswered calls placed by Defendant, Plaintiffs and putative Class Members suffered the expenditure of their time, exhaustion of their cellular telephone batteries, unavailability of their cellular telephones while Defendant's calls were incoming, and trespass upon their respective chattels. All of the above-mentioned injuries were caused by, and/or directly related to, Defendant's placement of calls to Plaintiffs and putative Class Members by using an ATDS to call their cellular telephone numbers.

59.     In response to Defendant's unlawful conduct, Plaintiffs filed the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited cellular telephone calls, and an award of statutory damages and actual damages to putative Class Members under the TCPA, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

60.     Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4) and as detailed in the individual counts below, Plaintiffs brings this action on behalf of themselves and all others similarly situated. Specifically, Plaintiffs seeks to represent the following persons ("**the Class**" or "**Class Members**"):

> All persons within the United States who, between March 18, 2017 and the present, (1) received a non-emergency call to their cellular telephone numbers; (2) through the use of an automatic telephone-dialing system or an artificial or pre-recorded voice; (3) from Defendant; and (4) who were not Ford Motor Credit Company, LLC customers at the time of the calls.

The Class definition is subject to amendment as needed.

61.     Excluded from the Class are Defendant, its directors, officers, employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their Court staff, and Plaintiffs' counsel. Members of the above-defined Class can be easily identified through Defendant's records or those of its vendors who placed the calls at issue on behalf of Defendant.

## Numerosity

62.     At the time of filing, Plaintiffs do not know the exact number of putative Class Members.  However, given the volume of cellular telephone numbers placed to Plaintiffs, the volume of cellular telephone numbers reassigned on a daily basis[1], and the volume of Ford customers throughout the United States,

---

[1] According to the Federal Communications Commission, as many as 100,000 cellular telephone numbers are reassigned every day. *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015).

Class Members likely number in the thousands, if not hundreds of thousands, and are geographically disbursed throughout the country.

63.    The alleged size and geographic disbursement of the putative Class, and relatively modest value of each individual claim, makes joinder of all Class Members impracticable or impossible.

## **Predominance of Common Questions of Law and Fact**

64.    This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members.  The common legal and factual questions include at least the following:

    a.   whether Defendant uses an ATDS, or artificial or pre-recorded voice to place calls to cellular telephones;

    b.   whether between March 18, 2017 and the present, Defendant used an ATDS or artificial or pre-recorded voice to place calls to the cellular telephones of Plaintiff and putative Class Members;

    c.   whether between March 18, 2017 and the present, Defendant used an artificial or pre-recorded voice in connection with its placement of autodialed calls to the cellular telephones of Plaintiff and putative Class Members;

    d.   whether Defendant is subject to the TCPA;

    e.   whether Defendant can show that it obtained prior express consent from Plaintiff and putative Class Members to place calls to their

cellular telephones using an ATDS or artificial or pre-recorded voice;

f.   whether Defendant's conduct violates the TCPA;

g.   whether Defendant's conduct was negligent;

h.   whether Defendant's conduct was knowing and/or willful;

i.   whether Defendant is liable for damages, and the amount of such damages;

j.   whether Plaintiff and putative Class Members are entitled to declaratory relief;

k.   whether Defendant should be enjoined from engaging in conduct in violation of the TCPA in the future; and

l.   whether Plaintiff and Class Members are entitled to any other remedy.

## **Typicality**

65.   Plaintiffs claims are typical of the claims of the putative Class Members, as Plaintiffs and Class Members have been injured by Defendant's uniform misconduct – the placement of calls to cellular telephones using an ATDS or artificial or pre-recorded voice for non-emergency purposes and without prior express consent.

66.   Plaintiffs share the aforementioned facts and legal claims and/or questions with all putative Class Members.  Further, a sufficient relationship exists

between Defendant's conduct and the damages sustained by Plaintiffs and putative Class Members.

## Adequacy

67.    Plaintiffs will fairly and adequately protect the interests of putative Class Members and is committed to the vigorous prosecution of this action. Plaintiffs have retained counsel experienced in complex consumer class action litigation and matters specifically involving TCPA violations.  Plaintiffs intend to prosecute this action vigorously, and has no interest adverse or antagonistic to those of the Class.

## Superiority

68.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members' claims is impracticable or impossible for at least the following reasons:

a.    The Class claims predominate over any questions of law or fact (if any) affecting only individual Class Members;

b.    Absent a Class, the Class Members will continue to suffer damage and Defendant's violations of the TCPA will continue without remedy;

c.    Given the size of individual Class Members' claims, few (if any) putative Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed and continues to commit

16

against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.     Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts, while also increasing the delay and expense to all parties and the courts. Comparatively, the class action device provides economies of scale and allows Class Members' claims to be comprehensively administered and uniformly adjudicated in a single proceeding;

e.     When the liability of Defendant has been adjudicated, claims of all Class Members can be administered efficiently and determined uniformly by the Court;

f.     No difficulty impedes the action's management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the damages caused to them by Defendant's uniform misconduct;

g.     The litigation and trial of Plaintiff's claims are manageable;

h.     Defendant has acted and/or refused to act on grounds generally applicable to Plaintiff and the Class by placing calls to their cellular telephone numbers, using an ATDS or artificial or pre-recorded voice, for non-emergency purposes and without their prior express consent, rendering just and appropriate final injunctive relief for the Class; and

i.    Because Plaintiffs seek injunctive relief and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, and establishing incompatible standards of conduct for Defendant. Additionally, bringing individual claims would burden the courts and result in an inefficient method of resolving this action. As a practical matter, adjudications with respect to individual Class Members would be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair or impede their ability to protect their respective interests. Consequently, class treatment is a superior method for adjudication of the issues in this case.

## CAUSES OF ACTION

### COUNT I
### Negligent Violation of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227, *et seq*.

69.    Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 67, as though fully set forth herein.

70.    Without prior express consent, Defendant placed calls for non-emergency purposes to the cellular telephones of Plaintiffs and Class Members using an ATDS or artificial or pre-recorded voice with the capacity to store or produce telephone numbers to be called.

71.     The foregoing acts constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*.

72.     Under 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged negligent violations of the TCPA, Plaintiff and Class Members are entitled to an award of $500.00 in statutory damages for each and every non-emergency call placed in violation of the TCPA.

73.     Plaintiffs and Class Members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

74.     Plaintiffs and Class Members are also entitled to an award of costs and expenses.

### COUNT II
### Knowing and/or Willful Violation of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227, *et seq*.

75.     Plaintiffs incorporates by reference the allegations in Paragraphs 1 through 67, as though fully set forth herein.

76.     Without prior express consent, Defendant placed calls for non-emergency purposes to the cellular telephones of Plaintiffs and Class Members using an ATDS or artificial or pre-recorded voice with the capacity to store or produce telephone numbers to be called.

77.     The foregoing acts constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each of the above cited provisions of 47 U.S.C. §§ 227, *et seq*.

78.     Pursuant to 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged knowing and/or willful violations of the TCPA, Plaintiffs and Class Members are entitled to an award of $1,500.00 in statutory damages for each and every non-emergency call placed in violation of the statute.

79.     Plaintiffs and Class Members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

80.     Plaintiffs and Class Members are also entitled to an award of costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that the Court grant Plaintiffs and all putative Class Members the following relief against Defendant:

A.     $500.00 in statutory damages for each and every call negligently placed by Defendant in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

B.     $1,500.00 in statutory damages for each and every call willfully and/or knowingly placed willfully and/or knowingly sent by Defendant in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

C.     An award of actual damages resulting from Defendant's violations of the TCPA;

D.     Injunctive relief seeking the implementation of measures by Defendant to stop future violations of the TCPA;

E.     An award of costs and expenses to Plaintiffs counsel;

F.     An order certifying this matter as a class action pursuant to Federal Rule of Civil Procedure 23, certifying the Class defined herein, appointing Plaintiffs as Class Representative, and appointing Plaintiffs counsel as Class Counsel; and

G.  Any additional relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury on all counts so triable.

Respectfully submitted,

**/s/ Octavio "Tav" Gomez**
Octavio "Tav"Gomez, Esquire
Florida Bar No.: 0338620
Georgia BarNo.: 617963
Pennsylvania Bar No.: 325066
MORGAN & MORGAN, PA
TGomez@forthepeople.com

**s/ Joshua R. Kersey**
Joshua R. Kersey
Florida Bar No. 087578
MORGAN & MORGAN, PA
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile:  (813) 222-2490
JKersey@ForThePeople.com
AWynne@ForThePeople.com
*Attorneys for Plaintiffs*